# EDITH MOREY v. SCHOOL BOARD OF INDEPENDENT SCHOOL DISTRICT NO. 492, AUSTIN PUBLIC SCHOOLS.

136 N. W. (2d) 105.

June 25, 1965—No. 39,693.

*William J. Nierengarten,* for appellant.

*William J. Baudler, Baudler & Baudler, Hugh V. Plunkett, Jr.,* and *Plunkett & Plunkett,* for respondent.

*Peter S. Popovich, James E. Knutson,* and *Peterson & Popovich,* for Minnesota School Boards Association and Minnesota Association of School Administrators, amici curiae.

MURPHY, JUSTICE.

This is an appeal from an order of the district court denying a motion of appellant school board to reinstate its order terminating the contract of one of its teachers. The determinative question for review is whether the board made and entered proper findings of

fact in proceedings brought under Minn. St. 125.12 to terminate a teacher's contract.

This is the second time this proceeding has been before us for review. In Morey v. School Board of Ind. School Dist. No. 492, 268 Minn. 110, 128 N. W. (2d) 302, we examined the original certiorari proceeding before the Mower County District Court brought to set aside a resolution of the school board which purported to terminate the teacher's contract. An extended restatement of the background of the proceedings would serve no useful purpose here. It is sufficient to say that in February 1962 Miss Morey was served with notice that the board proposed to terminate her contract because her conduct as a teacher was "acrimonious in content and disruptive of productive school operations"; her method of teaching was "harmful to the children, to the other teachers * * * and to the operation of the School District"; she had a mental health problem; and she had been insubordinate to her superiors. After an extended hearing on these charges, the board passed a resolution terminating her contract. On certiorari to the district court the matter was remanded to the board. The district court felt that the record contained evidence which might support two of the asserted charges but was insufficient to sustain the others. He was accordingly of the view that the board should be required to make findings of fact so that the record would show reasons upon which the board relied for its action.

We affirmed the trial court's order remanding the matter to the board and in that decision expressed principles by which we must be guided and controlled on this appeal. In our decision we emphasized that even though Minn. St. 125.12 does not expressly require findings of fact, there are strong reasons requiring that they must be made. In our decision we said (268 Minn. 116, 128 N. W. [2d] 307):

"* * * When such findings are made they should not only set out the specific charge or charges upon which the school board based its decision, but also those basic facts reported in the transcript of the proceedings which, in the school board's judgment, support the charge or charges."

Upon remand to the board, the membership of that body met to further consider the matter. At that meeting the members of the board, having been provided with a transcript of the testimony taken in the original proceeding, considered separately each stated charge against the teacher. After completing their deliberations on each point, they adopted a resolution to the effect that the record contained evidence supporting each charge and cited the page in the transcript or record of the original hearing where such evidence might be found. Apparently, the board assumed that this action complied with our decision which required that it make findings of fact. On the basis of this resolution, the board presented a motion to the district court to reinstate the original resolution terminating the teacher's contract, "quashing the writ of certiorari * * * and dismissing the proceedings commenced by Relator subsequent to said resolution." The order of the trial court denying this motion is now before us for review.

The trial court came to the conclusion that the board had still failed to comply with the order of the court to make findings of fact and stated, "The board did little more than restate the original charges in making the so-called findings of fact." It noted that the supplemental proceedings provided page reference to the record which purportedly set forth evidence in support of the board's charges against the teacher and observed that "the entire transcript of this meeting is devoid of any discussion of evidence favorable to the teacher." The trial court, nevertheless, reviewed the record as it related to each of the four charges, and after a careful examination of it came to the conclusion that the testimony in support of the charge that the teacher's conduct was "acrimonious" and "disruptive" was so mixed with conclusions, characterizations, hearsay, and opinion as to be of little evidentiary value. The trial court was of the view that the record failed to substantiate the charge with relation to harmful teaching methods and observed, "We cannot help but wonder if there is significance in the fact that in 689 pages of testimony the board could find no evidence which reflected improper teaching methods." In relation to the charge of mental illness the

court observed, "It is not shown that a person free of mental illness would not have reacted similarly [to the actions of Miss Morey] under the circumstances." The testimony on this subject, the trial court felt, was remote and irrelevant. The trial court revised his previous view that the record contained some evidence supporting the charge of insubordination. Some of the evidence on this point related to the teacher's refusal to see a psychiatrist. The court observed:

"* * * A fairer interpretation would seem to be that she neither refused nor accepted the assignment, was uncertain of her certification and wanted legal advice before either accepting or refusing. * * *[Her] doubt is readily understood when viewed in the context of the situation at the time the incident occurred."

Moreover, the evidence on this point was in the nature of conclusions and characterizations which weakened its force. The court concluded:

"In substance, we are of the opinion that the nature of the proceedings before the board on both occasions were such that the requirement of a fair hearing has not been met, the final result is, therefore, arbitrary and, therefore, the resolution of respondent cannot stand."

■ We think there is a great deal of merit to the teacher's contention that the evidence in support of the general charges made by the school board ranges over a broad area of vague and theoretical matters which involve in great part hearsay and irrelevant evidence, including long dissertations by witnesses on procedures and teaching techniques which would indicate that the hearing was directed, in part at least, to a defense of the school administration's operations and procedures.[1] It is true that an administrative body acting quasi-

---

[1]Illustrative of the kind of evidence which consumed page after page of the extended record is the following testimony of a supervisor with reference to an interview with Miss Morey: "* * * So I went back to Miss Morey with one question—well, maybe I had others, but one that I remember, and it was this: Will you tell me, please, what it was that I told

judicially is not bound by strict procedural rules which circum-
scribe the action of a court,[2] and that incompetent evidence is not
fatal to its determination. Nevertheless, when a teacher's job is at
stake, a just concern for fair play would require that the evidence
which is calculated to support the charges should be relevant and
have probative value. The board should not have to find support for
its determination in hearsay or to make deductions from opinions
and views relating to technical or theoretical principles. If there is
substance to the charge that the teacher's conduct and want of
competence require her dismissal, there ought to be substantial evi-
dence of it which could be established in a fraction of the time con-
sumed in the present proceeding. We do not pass upon the merits of
the controversy. We must agree with the trial court that such rele-
vant evidence as there may be in support of the board's charges is

---

you the morning that I was here when we discussed these test results? And
if my memory serves me, what she gave me at that time was this same
explanation that I had given her. Now, I have talked with teachers for
years and years about not—not making mistakes in interpreting test results
as being a precise measure because we've learned so often that you can
test a child one day with a test, you can give that test six weeks later
and you can have a very different score. Or take tests in reading—I can
give a Metropolitan to a child and get one score, I can use an Iowa Basic
Skills Test and get still another score, so you see these scores are very
relative. Well, now, that was the point that I had—that I had hoped that I
had made. All right. Now, the past, Miss Morey—excuse me, I am wander-
ing here a little bit. The point that I wanted to make right now was that
Miss Morey, I thought, was giving me back my explanation and it was the
same explanation, that's the point—the same explanation that I had been
giving to teachers for years, for not over-interpreting test results. I thought
I had made that clear. And over the years I have felt that the teachers
have understood me, and most of our teachers have used that kind of an
explanation. I am sure there are variations, I am sure not everyone has
done it the same way, but generally teachers have understood that. I've
had it in bulletins, I have it in a conference bulletin, it's been said over and
over again. All right."

[2]State v. Tri-State T. & T. Co. 204 Minn. 516, 284 N. W. 294; State
ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. (2d) 544;
Sabes v. City of Minneapolis, 265 Minn. 166, 120 N. W. (2d) 871.

buried in a great mass of material, which does not seem to us to have a bearing upon the precise charges made.

It is unnecessary for this court to again discuss issues relating to the necessity for findings and the scope of review of administrative orders. It was fully established by our decisions in Morey v. School Board of Ind. School Dist. No. 492, 268 Minn. 110, 128 N. W. (2d) 302, and in Sellin v. City of Duluth, 248 Minn. 333, 80 N. W. (2d) 67, that making findings of fact is the obligation of the administrative body and is not a function to be performed by the court in the first instance. We must first know what the decision means before we undertake the task of attempting to winnow the wheat from the chaff to find out if the conclusions of the administrative body are without support in the evidence and examine whether its action is right or wrong.

We agree with the trial court that the board has not complied with the trial court's directions in making findings of fact. Certainly that function is not performed by referring us to certain pages in the record and transcript of the proceedings. There is no hard-and-fast rule as to how detailed and specific findings should be. We noted in State v. Tri-State T. & T. Co. 204 Minn. 516, 284 N. W. 294, that the zone of propriety between the extremes of mere conclusion and undue particularity has never been accurately defined. Nevertheless, we said (204 Minn. 524, 284 N. W. 301), "all of the essential facts upon which the order is based must be found."

The general rule is that an administrative board should state with clarity and completeness the facts and conclusions essential to its decision so that a reviewing court can determine from the record whether the facts furnish justifiable reason for its action. An administrative board should not leave to the court the obligation "to spell out, to argue, to choose between conflicting inferences. Something more precise is requisite in the quasi-jurisdictional findings of an administrative agency. Beaumont, S. L. & W. Ry. Co. v. United States, 282 U. S. 74, 86, 51 S. Ct. 1, 75 L. ed. 221." United States v. Chicago, M. St. P. & P. R. Co. 294 U. S. 499, 510, 55

S. Ct. 462, 467, 79 L. ed. 1023, 1032; Annotation, 146 A. L. R. 209; 2 Am. Jur. (2d) Administrative Law, §§ 455 and 456.

Accordingly, we must again remand the case for findings in accordance with our decision in Morey v. School Board of Ind. School Dist. No. 492, *supra,* or for such other action as the board may deem appropriate.

Affirmed and remanded.