PHYL WEGNER v. INDEPENDENT
SCHOOL DISTRICT NO. 286.

222 N. W. 2d 352.

October 11, 1974—No. 44600.

Oppenheimer, Wolff, Foster, Shepard & Donnelly, Craig W. Gagnon, and Robert R. Reinhart, Jr., for appellant.

LeVander, Zimpfer & Tierney and Bernard G. Zimpfer, for respondent.

Heard before Sheran, C. J., and Peterson, Kelly, and Yetka, JJ., and considered and decided by the court en banc.

PER CURIAM.

Petitioner appeals from an order of the district court which affirmed an order of respondent school district terminating her continuing teaching contract and which quashed her petition for certiorari. Petitioner contends that the district court's order, and indirectly the school board's order, should be reversed for either of two reasons: First, because the school district did not timely provide her with a copy of its findings, and second, because the school board violated her right to equal protection by basing its decision in part upon the fact that she was a married woman. We affirm.

During the fall of 1972 the school district, faced with declining enrollments and the need for budget cuts, began to solicit input from students, teachers, district residents, and others concerning the proper method of meeting the problem. Subsequently, on November 13, 1972, the school board met and passed a resolution regarding the discontinuance or reduction in scope of educational programs. This resolution stated in part as follows:

"That the School Board has established the following criteria as a matter of policy to be utilized in determining which teachers' contracts will be terminated in effecting discontinuance of positions: qualifications, salaries, program elimination, comparative salaries, financial status, certification, longevity, competency, recommendations of its administrative staff, priority

of programs, educational background—degrees, incumbent to discontinued position, and other similar relevant considerations."

At a meeting on February 26, 1973, the board passed a resolution proposing termination of petitioner's position as second of two elementary physical education specialists.

After receiving timely notice of the proposed termination, petitioner requested a hearing pursuant to Minn. St. 1971, § 125.12, subd. 4. At that hearing, held before the board on March 26, 1973, the school superintendent, Douglas Rossi, testified that in reaching the decision to recommend termination of petitioner's position, he had considered program priorities and had discussed with the administrative staff the class size versus specialist route of reducing budget and that he felt that one of the two physical education specialist positions could properly be terminated. Petitioner testified that the superintendent gave, as one reason for the termination, that other similarly sized elementary schools got along with only one such specialist. Petitioner's claim that the school board discriminated against her on the basis of her marital status is based upon Superintendent Rossi's additional testimony at the hearing that one of the factors he considered in recommending termination of petitioner's position was the fact that she had financial security in the sense that her husband was employed.

At the conclusion of the testimony of Superintendent Rossi and others, the board adopted a resolution terminating petitioner's position and contract as of the end of the 1972-1973 school year. In its findings the board noted the efforts at budget reduction and then detailed the factors it considered, as follows:

"* * * [Q]ualifications, salaries, program elimination, comparative salaries, financial status, certification, longevity, competency, recommendations of its administrative staff, priority of programs, educational background—degrees, incumbent to discontinued position, the reports of the superintendent pertaining to enrollment figures, levy limitations, class size, budget cuts

in non-instructional, promotional and extra-curricular programs and community services."

1.   In challenging the termination order petitioner first points to the fact that although the board gave her timely notice of the termination resolution before April 1, 1973, it did not provide her with findings until April 12, 1973, after the deadline provided by Minn. St. 125.12, subd. 10, which reads in part as follows:

"\* \* \* If the board orders termination of a continuing contract or discharge of teacher, its decision shall include findings of fact based upon competent evidence in the record and shall be served on the teacher, accompanied by an order of termination or discharge, prior to April 1 in the case of a contract termination, or within ten days after conclusion of the hearing in the case of a discharge."

Although there are no cases exactly in point, Independent School District No. 316 v. Eckert, 281 Minn. 445, 161 N. W. 2d 692 (1968), is instructive. In that case, which involved review under the provisions of the Veterans Preference Act of a misconduct discharge, this court held that the failure of the reviewing board to make any specific findings was error without prejudice. Recognizing that the main purpose of requiring findings is so that a reviewing court can determine what the board found, we stated that the lack of findings was not crucial because only one instance of misconduct was specified in the notice of discharge, all of the evidence centered on a single episode, and the facts were not in dispute.

Similarly, this is a case where the facts are not really in conflict. And in two respects this is a stronger case for rejecting the claim of prejudice. First, the letter informing petitioner of the board's decision to terminate her contract stated clearly that copies of the resolution and the findings of fact were attached, and it was only a result of inadvertence that the findings were not in fact attached. Significantly, petitioner made no request

for the findings. Secondly, petitioner did obtain the findings, albeit after the deadline, and thus both she and the reviewing court had the benefit of the findings. We therefore hold that under the circumstances the board's failure to timely serve part of the findings does not merit reversal.

2. Petitioner's other contention on appeal is that the school authorities violated her right to equal protection by basing the decision to terminate her contract partly upon her status as a married woman. We do not believe that the record supports petitioner's contention and we therefore do not reach the question of discrimination based upon marital status.[1]

As our statement of fact indicates, Superintendent Rossi, in suggesting petitioner's position for termination, admittedly considered the fact that petitioner had financial security in the sense that her husband was employed. However, this is not the same as basing such a decision upon the fact that one is a married woman. Further, it is clear from his testimony that petitioner's financial security was not the prime basis for his decision. Beyond this, we should emphasize that it was the school board, not Superintendent Rossi, that officially terminated petitioner's position and it is their decision which we review. As the district court noted, the school board, in terminating petitioner's position, relied upon a number of criteria, none being marital status.

Affirmed.

---

[1] However, we do note gratuitously that the obviously dated statement by this court in State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. 2d 544 (1942), to the effect that marital status is a legitimate factor in termination decisions is of doubtful validity today.